# United States Court of Appeals
## For the First Circuit

No. 15-2298

UNITED STATES OF AMERICA,

Appellee,

v.

JOSEPH J. KENNEDY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

Oscar Cruz, Jr., Assistant Federal Public Defender, and Amy Barsky, Research and Writing Specialist, Federal Public Defender Office, for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

January 24, 2018

**KAYATTA**, **Circuit Judge**.  Joseph Kennedy appeals his conviction and sentence for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1).  Challenging his conviction, Kennedy argues that the district court erred in denying his motion to suppress evidence obtained from a warrantless search of the vehicle he was driving immediately before his arrest.  Challenging his sentence, he argues that the district court erred in finding that he qualified for a mandatory minimum sentence under the Armed Career Criminal Act ("ACCA").  We affirm Kennedy's conviction, but vacate his sentence and remand for resentencing.

## I.  Background

We draw from the district court's findings of fact for the circumstances leading to Kennedy's arrest and indictment.  In the spring of 2014, Kennedy was on federal supervised release when a warrant issued for his arrest based on allegations that he had violated the terms of his supervision.  While several officers from the Boston Police Department and the United States Marshals Service were conducting surveillance in Charlestown, Massachusetts at the address of Kennedy's longtime girlfriend, the Quincy Police Department transmitted a "Be On the Lookout" bulletin.  The bulletin explained that Kennedy was wanted for a larceny that had occurred in Quincy, Massachusetts the night before.  The surveillance team learned, from a United States Marshal who communicated the information in the bulletin, that the larceny had

- 2 -

involved the theft of a safe containing ammunition and possibly weapons, pepper spray, and drugs. The officers were also told that Kennedy might be driving a gray Honda Fit and were provided with the license plate number of that vehicle.

Later that afternoon, a gray Honda Fit matching the bulletin's description approached the surveillance location. One officer recognized Kennedy as the driver of the car from a photograph he had been shown previously. Kennedy parked the car legally near his girlfriend's apartment and exited the vehicle. When the officers approached Kennedy to arrest him, he ran away but was quickly apprehended. He was handcuffed and removed from the scene. Once Kennedy was secured and away from the car, one of the officers approached the Honda Fit. Through the window of the vehicle, the officer could see clutter on the backseat, including duffel bags, garbage bags, backpacks, and clothing. He also saw a large, box-shaped object on the backseat mostly covered by a duffle bag. A small visible portion of the box appeared to be gray and metallic. Believing the object to be the stolen safe, the officers decided to tow the vehicle. Before doing so, they opened the car and searched it. Inside, they uncovered a forced-open safe containing drug paraphernalia and the ammunition that served as the basis for Kennedy's charge in this case.

After Kennedy was indicted, he moved to suppress all evidence stemming from the warrantless search of the Honda Fit, on

the grounds that the search violated the Fourth Amendment. After a one-day evidentiary hearing, at which two officers testified, the court denied the motion, finding that the automobile exception applied and, in the alternative, that the officers had probable cause to believe the car itself had been used during the theft and therefore was the proper subject of an inventory search. Kennedy subsequently entered a conditional guilty plea, reserving the right to appeal the court's denial of his motion to suppress.

At sentencing, the primary issue was whether Kennedy qualified for a sentencing enhancement under the ACCA based on state crimes to which he had previously pled guilty. The parties presented arguments regarding six potential predicates: two convictions for Massachusetts assault with a dangerous weapon ("ADW"), three convictions for Massachusetts assault and battery with a dangerous weapon ("ABDW"), and one for Massachusetts aggravated assault and battery ("AA&B"). The court found that it was bound by First Circuit law to count the two ADW offenses as violent felonies and therefore as qualifying ACCA convictions.

As to the remaining offenses, the district court began by looking at the plea colloquy between Kennedy and the state court. The transcript of the colloquy showed that Kennedy had been charged with both AA&B and ABDW resulting from the same incident. In that incident, as described by the prosecutor, Kennedy and another attacker approached the victim, one of the two

attackers punched him, the victim fell backward and hit his head on a pole, and both Kennedy and the other attacker continued to punch and kick the victim once he was on the ground. Kennedy was charged with one count of AA&B and three counts of ABDW, one for assault and battery with a pole and two for assault and battery with a "shod foot," due to repeated kicks to the victim.

After the prosecutor recited these facts at the plea hearing, the state court asked Kennedy various questions about his plea. Several of Kennedy's responses to important questions such as "Did you commit those acts?" were deemed "Unintelligible" by the reporter who completed the transcript, which was not requested until long after the proceeding. At sentencing in the district court, the government presented a common-sense argument regarding how the court should interpret the incomplete transcript of the plea colloquy: If any of Kennedy's responses had been "No," or if Kennedy had vacillated at all, the state court would have stopped and asked follow-up questions, rather than immediately continuing with the colloquy. The government also explained that it had listened to the audio of the state court proceeding and, although it could not make out Kennedy's responses, it could tell that they were very brief, consistent with one-word answers. Finally, the government emphasized that after asking Kennedy numerous questions, the state court asked, "Have you been confused with any of my questions?" to which Kennedy audibly responded "I have not."

On this basis, the government urged the district court to infer that Kennedy had answered "Yes" to the key questions by the state court (and "No" where appropriate).

Accepting the government's interpretation of the plea colloquy transcript, the district court found that Kennedy had pled guilty to three additional offenses (AA&B, ABDW with a pole, and ABDW with a shod foot) that constituted violent felonies, any one of which, when added to the two ADW offenses, was sufficient to satisfy the ACCA. The court therefore applied the ACCA enhancement and sentenced Kennedy to 180 months' imprisonment, the minimum sentence under the statute. This timely appeal followed.

## II.  Discussion

We discuss in turn Kennedy's two objections to the proceedings below, beginning with the suppression challenge.

### A.

In reviewing the denial of a motion to suppress, we review factual findings for clear error and conclusions of law, including ultimate constitutional determinations such as the existence of probable cause, de novo. See Ornelas v. United States, 517 U.S. 690, 699 (1996); see also United States v. Camacho, 661 F.3d 718, 724, 726-27 (1st Cir. 2011) (reviewing the district court's determination of reasonable suspicion de novo).

Under the automobile exception to the Fourth Amendment's warrant requirement, see California v. Acevedo, 500 U.S. 565, 579

- 6 -

(1991), the question before us is whether the totality of the circumstances created a "fair probability that . . . evidence of a crime" would be found in the Honda Fit. United States v. Dion, 859 F.3d 114, 132 (1st Cir. 2017) (alteration in original) (quoting United States v. Silva, 742 F.3d 1, 7 (1st Cir. 2014)). When the officers searched the vehicle, they knew the following information: Kennedy was wanted for the theft of a safe containing ammunition and possibly other items that had occurred the previous night; there was clutter in the backseat of the vehicle he had been driving immediately before his arrest, including bags and clothing piled on top of what appeared to be a large, box-shaped item consistent with the size and shape of a safe; and the small portion of the box-shaped item that was exposed appeared gray in color and metallic. These were all facts found by the district court based on the testimony of two of the police officers involved in Kennedy's arrest, and these findings were not clearly erroneous. See Camacho, 661 F.3d at 723 ("A clear error exists only if, after considering all the evidence, we are left with a definite and firm conviction that a mistake has been made." (internal quotation marks omitted)); United States v. Barnes, 506 F.3d 58, 62 (1st Cir. 2007) ("Clear error does not exist if any reasonable view of the evidence supports the decision." (internal quotation marks omitted)). This factual basis -- together with reasonable inferences drawn therefrom -- was sufficient to establish a "fair probability" that

evidence of the larceny would be found inside the vehicle.  <u>Dion</u>, 859 F.3d at 132.

Kennedy does not dispute these facts but nevertheless argues that the district court erred in denying his motion to suppress for two reasons:  The officers did not have specific information linking the Honda Fit to the larceny and the passage of ten to twelve hours between when the larceny was reported and when Kennedy was arrested renders any link between the crime and the car weak.

Assuming Kennedy's first contention is true, it is irrelevant.  The officers' search was proper so long as there was probable cause to believe the Honda Fit contained evidence of the larceny.  That the Honda Fit was directly used in the commission of the larceny -- as opposed to, for example, after the larceny to transport the stolen items -- is not a necessary condition for that conclusion.  And Kennedy's assertion that there was "no evidence of the theft in plain view in the Honda" is simply untrue. Although the district court correctly found that the full safe was not in plain view, what was in plain view as established by the officers' testimony was more than enough to support a reasonable belief that the object was a safe.

As for Kennedy's second argument, the passage of ten to twelve hours after the report of the Quincy larceny does not render the search unconstitutional.  While there may be circumstances in

which the passage of half a day turns a tip into stale information that is insufficient for probable cause, cf. United States v. Zayas-Diaz, 95 F.3d 105, 114-15 (1st Cir. 1996), this is not one of those cases.  Simply put, what the officers saw in the car served as verification of the information in the bulletin and ameliorated any concern that the information was stale.  Given the totality of the circumstances in this case, there was probable cause to search the Honda Fit.

Because we conclude that the automobile exception applies and therefore that the search of the Honda Fit was reasonable, we can affirm Kennedy's conviction without any need to determine whether the district court's alternative basis for denying his motion to suppress was proper.

## B.

We turn now to Kennedy's challenge to his sentence. Pursuant to the ACCA, an individual convicted of being a felon in possession of a firearm or ammunition under 18 U.S.C. § 922(g)(1) is subject to a mandatory minimum sentence of fifteen years if he also has three prior convictions for violent felonies.  18 U.S.C. § 924(e)(1).  The ACCA defines a violent felony, in relevant part, as any crime punishable by imprisonment over one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).

It is undisputed that Kennedy has two prior convictions for Massachusetts ADW, an offense that qualifies as a violent felony under United States v. Whindleton, 797 F.3d 105, 116 (1st Cir. 2015). The question before us is whether Kennedy has a third predicate offense for ACCA purposes. There are two possible contenders for Kennedy's third qualifying offense: Massachusetts AA&B or Massachusetts ABDW, to both of which Kennedy pled guilty in February 2010. In its supplemental brief, the government informed us that it "no longer seeks to rely" on the AA&B conviction as a basis to affirm Kennedy's ACCA sentence. Thus, we address only whether Kennedy's ABDW conviction qualifies as a violent felony.[1] This "is a legal question we review de novo." Id. at 108.

Massachusetts ABDW comes in two forms: intentional and reckless. See United States v. Tavares, 843 F.3d 1, 12 (1st Cir. 2016). This court has described the two forms of ABDW as:

> (1) The intentional and unjustified touching of another by use of a dangerous weapon, or,
> (2) The intentional commission of a wanton or reckless act [with a dangerous weapon] causing more than transient or trifling injury to another.

---

[1] At the government's behest, we focus even more narrowly on Kennedy's two convictions for assault and battery with a shod foot, rather than on the conviction arising out of the victim falling against a pole.

- 10 -

_Id._ at 14 (alteration in original). We have held that the first, intentional form of Massachusetts ABDW is a crime of violence under the force clause of section 4B1.2(a)(1) of the United States Sentencing Guidelines. _Tavares_, 843 F.3d at 13. That holding fits equally well with the ACCA's force clause. See _United States v. Edwards_, 857 F.3d 420, 427 n.12 (1st Cir. 2017). More recently, we held that reckless ABDW is not a violent felony under the force clause of the ACCA. _United States_ v. _Windley_, 864 F.3d 36, 39 (1st Cir. 2017) (per curiam) (adopting the analysis in _Bennett_ v. _United States_, 868 F.3d 1 (1st Cir.), _withdrawn as moot by_ 870 F.3d 34 (1st Cir. 2017)). Thus, ABDW is not categorically a violent felony, so we cannot affirm Kennedy's sentence on that basis. See _United States_ v. _Faust_, 853 F.3d 39, 51 (1st Cir.), _reh'g denied_, 869 F.3d 11 (1st Cir. 2017) (explaining that under the categorical approach, a court must first determine "whether all of the conduct covered by the statute categorically requires violent force"). Instead, to affirm Kennedy's sentence, we would need to find both that Massachusetts ABDW is divisible into its intentional and reckless forms, and that Kennedy pled guilty to the intentional form. See _Mathis_ v. _United States_, 131 S. Ct. 2243, 2249, 2256 (2016).

The question whether Massachusetts ABDW is divisible into elementally distinct forms has no easy answer. In _Tavares_, we attempted to predict how the Massachusetts Supreme Judicial

Court would rule.  843 F.3d at 14-15.  But, as we later explained, we did so without the benefit of any argument to proceed otherwise. See United States v. Tavares, 849 F.3d 529, 529–30 (1st Cir. 2017) (denying petition for rehearing).  We later pointed toward a more "backward-looking," "historical" approach in attempting to gauge the divisibility of another Massachusetts offense.  Faust, 853 F.3d at 56-57 (quoting McNeill v. United States, 563 U.S. 816, 820, 822 (2011)).  In this case now before us, we can avoid the difficult question of divisibility because we find that, even if ABDW is divisible into intentional and reckless forms, the record of Kennedy's prior convictions do not allow us to find that he pled guilty to intentional ABDW.  Our reasoning follows.

When an offense is divisible (or, as here, assumed to be divisible), we look to so-called Shepard documents to see if we can determine that the defendant was previously convicted of the ACCA-qualifying form of the offense (here, intentional ABDW). Shepard v. United States, 544 U.S. 13, 26 (2005) (holding that, in determining whether a defendant pled guilty to a qualifying offense, a sentencing court may look to the charging document, the plea agreement, the plea colloquy transcript, or to some "comparable judicial record").  The relevant record in this case consists of the following.

First, the criminal complaint lacks any express allegation concerning Kennedy's mental state.  It alleges

conclusory facts (e.g., Kennedy "did, by means of a dangerous weapon, a shod foot, assault and beat" the victim) that certainly sound like an intentional act.  But cf. United States v. Holloway, 630 F.3d 252, 262 (1st Cir. 2011) (vacating a sentence under the ACCA's now-severed residual clause because boilerplate language "did assault and beat" in an indictment was insufficient to establish a violent felony).  But it also alleges "serious bodily injury," a fact only required to sustain the reckless version of the offense.

Second, there is the clerk's description of the accepted plea at the end of the colloquy.  It, like the criminal complaint, makes no mention of Kennedy's state of mind, describing the judgment as simply a finding of guilty on charges of "assault and battery with a dangerous weapon."

Third, there is the prosecutor's description at the plea colloquy of the facts giving rise to the charges, together with Kennedy's admission that he "commit[ted] those acts."[2]  Those facts, like the statements in the complaint, plainly describe conduct that one would perform intentionally.  Specifically, the prosecutor described the assault as follows:

---

[2] Although the transcript reflects that many of Kennedy's responses to questions by the state court were "Unintelligible," we, like the district court, assume that Kennedy answered "Yes" to these questions (and "No" where appropriate), thereby pleading guilty to the facts presented by the prosecutor.

> [The victim] was jumped by two white males who then fled the area. . . . [O]ne of the individuals punched him.  He fell to the ground; fell back, hitting his head on a pole.  They continued to punch him and kick him when he was on the ground.

The government argues that the facts alleged, admitted, and "found by the district court show that Kennedy engaged in intentional, not merely reckless, conduct."  So the question is posed, do we infer from admitted behavior that a defendant was convicted of the ACCA-qualifying form of the offense whose elements could be satisfied by the behavior?  Or do we instead limit our review of the plea colloquy to determine whether the defendant actually pled guilty to that form of the offense?  The Supreme Court's case law arguably points in several directions on this question.  In Shepard, the Court stated that in pleaded cases, we can look to "the statement of factual basis for the charge, Fed. Rule Crim. Proc. 11(a)(3), shown by a transcript of plea colloquy . . . or by a record of . . . findings of fact adopted by the defendant upon entering the plea."  544 U.S. at 20; see also id. at 25 (plurality opinion) (noting that "the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea" can provide certainty of a generic finding).  Shepard, though, also suggests that what we look for in such an examination is whether there is an admission of "the generic fact," id. (plurality opinion), which is the fact that

differentiates, for example, a burglary that is a violent felony (burglarizing a building or structure) from the overly broad non-generic burglary (which includes burglarizing a car). Here, the generic fact would be that Kennedy acted intentionally, which he never admits other than by implication.

More generally, the Court's subsequent direction instructs that the relevant inquiry does not train on ascertaining whether Kennedy admitted facts that could support a conviction for intentional ABDW. See Mathis, 136 S. Ct. at 2254 (explaining that the modified categorical approach "is not to be repurposed as a technique for discovering whether a defendant's prior conviction . . . rested on facts . . . that also could have satisfied the elements of a generic offense"). Rather, we look at the record documents to determine the elements of the offense for which Kennedy was convicted. "How a given defendant actually perpetrated the crime -- what we have referred to as the 'underlying brute facts or means' of commission -- makes no difference[,] even if his conduct fits within the generic offense . . . ." Id. at 2251 (internal citation omitted); see also Descamps v. United States, 570 U.S. 254, 262-63 (2013) (emphasizing that a court's responsibility is "not to determine 'what the defendant and state judge must have understood as the factual basis of the prior plea,'" but rather "to assess whether the plea was to the version of the crime . . . corresponding to

- 15 -

the generic offense" (quoting Shepard, 544 U.S. at 25–26 (plurality opinion))); id. (emphasizing the "narrow scope" of the review under the modified categorical approach).  In light of this guidance from the Court, we have observed that the task of the sentencing court "is not to fit the facts of the individual defendant's conduct into one of the divisible offenses."  Faust, 853 F.3d at 53.

We think it best to follow the Court's most recent and direct pronouncements, as we did in Faust.  We look to Kennedy's plea colloquy not to see if the admitted facts could support a conviction for the intentional form of ABDW, but instead to see if he was charged with and pled guilty to that offense.  A hypothetical illustrates why we proceed in this manner.

Imagine that the Massachusetts statute set forth two plainly separate (and thus completely divisible) offenses: intentional ABDW and reckless ABDW.  Now picture a criminal complaint or indictment charging "reckless ABDW," a plea colloquy admitting to facts such as we have here, and a judgment of conviction for "reckless ABDW."  Clearly, under Descamps, we would decide the conviction to be for reckless ABDW notwithstanding the facts admitted during the colloquy.  Conversely, if the complaint and judgment alleged intentional ABDW, then we would regard the conviction as being for that offense.

Here, the government asks us to view Massachusetts ABDW just as in the hypothetical: two divisible offenses with distinct elements. And the facts Kennedy admitted to are just as in the hypothetical. What is missing -- in the complaint, in the colloquy, and in the judgment -- is any specificity as to which offense was charged and admitted. It is as if the complaint and judgment said "intentional or reckless ABDW." And if they so stated, we certainly could not say -- much less with "Taylor's demand for certainty," Mathis, 136 S. Ct. at 2257 (quoting Shepard, 544 U.S. at 21) -- that Kennedy was convicted of a qualifying predicate offense under the ACCA. See Faust, 853 F.3d at 59 ("Facts that are as consistent with intentional [assault and battery on a police officer] as they are with reckless ABPO can hardly be said to 'speak plainly.'"). Rather, we would have to say that, even assuming ABDW is divisible, the conviction was not plainly for one form rather than the other.

Although we have at times suggested that courts may draw inferences from facts presented in a plea colloquy, see United States v. Miller, 478 F.3d 48, 52 (1st Cir. 2007) (noting that "an inquiring court has the right to draw reasonable inferences from the evidence" and need not "wear blinders" or "leave common sense out of the equation"), we have generally declined to do so for questions of mens rea, see United States v. Martinez, 762 F.3d 127, 136 (1st Cir. 2014) (holding that the defendant's prior

- 17 -

conviction was not a crime of violence under the sentencing guidelines even though he admitted that he "struck" his girlfriend because there was no showing that he confessed to the "added gloss" of doing so intentionally, rather than recklessly); cf. id. n.5 (setting aside the "perhaps more difficult question of whether, when the elements of two or more offenses" overlap, "a plea colloquy in which a defendant admits to facts that might have given rise to a conviction under more than one of them nevertheless permits a sentencing court to conclude that the admissions were legally necessary components of a plea to a more serious charge"); Patel v. Holder, 707 F.3d 77, 82 (1st Cir. 2013) (applying the modified categorical approach in the immigration context and finding that the prosecutor's description of the offense "can only tell us so much about what was in [the defendant's] own mind during the crime").

Another way to think about this question is to consider the plea context as an analogue to trial. The Supreme Court has made clear that the modified categorical approach applies in both situations, and in the same manner. See Shepard, 544 U.S. at 19. For tried cases, sentencing courts are instructed to look to charging documents, jury instructions, and jury verdicts (or the judge's formal rulings of law and findings of fact in a bench trial) to determine the nature of the prior conviction. See id.; Taylor v. United States, 495 U.S. 575, 602 (1990). Neither Taylor

nor Shepard allows courts to look to trial testimony for the facts presented or admitted to by the defendant. That was exactly what the Supreme Court sought to avoid by imposing the categorical approach in the first place. See Taylor, 495 U.S. at 601 (suggesting that where the charging paper does not reveal the theory presented to the jury, it would be inappropriate to allow the government to introduce the trial transcript before the sentencing court); cf. Descamps, 570 U.S. at 274 (noting that "we have expressly and repeatedly forbidden" courts from asking whether a particular set of facts leading to a conviction conforms to an ACCA offense). This analogy to tried cases should guide our application of the modified categorical approach in plea cases like Kennedy's. We can look to the plea colloquy, see Shepard, 544 U.S. at 20, but not for statements and admissions of the type that might show up in testimony at trial. Rather, we are looking for something that resembles what we would find in a charging document or jury verdict in a tried case. Cf. Descamps, 570 U.S. at 272 ("A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives.").

This mode of analysis admittedly leaves little role for much of the plea colloquy in the modified categorical approach, just as it leaves little room for trial testimony in tried cases. The colloquy, though, remains relevant because it could very well

- 19 -

reflect not just the facts of the defendant's conduct, but also that he was charged with and pled to a particular version of the offense. In other words, Kennedy's colloquy might have -- but did not -- contain an explicit discussion of intentional or reckless ABDW. A colloquy, unlike the one here, might also reflect facts that simply could not support one form of the offense.

Our analysis presumes that defendants may admit to facts that are not necessary to support a conviction on the charge brought against them. We are in good company in so presuming. See Mathis, 136 S. Ct. at 2253 ("[A] defendant may have no incentive to contest what does not matter under the law . . . ."); Descamps, 570 U.S. at 270 (noting that defendants often have "little incentive to contest facts" that are "irrelevant to the proceedings"). Two tendencies make it especially likely that a defendant will admit to additional facts above and beyond those necessary for his conviction. First, where, as here, there is no clear difference in the sentencing range for the various forms of the offense, a defendant has no reason to clarify the nature of his admission. See Mass. Gen. Laws ch. 265 § 15A(b) ("Whoever commits an assault and battery upon another by means of a dangerous weapon shall be punished by imprisonment in the state prison for not more than 10 years or in the house of correction for not more than 2 1/2 years, or by a fine of not more than $5,000, or by both such fine and imprisonment."). Second, in the context of a plea

bargain, defendants frequently plead guilty to lesser charges than those originally brought against them; as a result, the facts alleged and admitted to at the plea colloquy can often support the greater charge. The First Circuit regularly affirms convictions and sentences arising out of these situations. See, e.g., United States v. Sánchez-Colberg, 856 F.3d 180 (1st Cir. 2017) (affirming conviction and sentence where the defendant pled guilty to possessing marijuana and certain firearms in exchange for the government's dismissal of other charges and the facts alleged at the plea colloquy supported those additional charges); United States v. Díaz-Bermúdez, 778 F.3d 309 (1st Cir. 2015) (similar); see also United States v. Díaz-Concepción, 860 F.3d 32 (1st Cir. 2017) (affirming conviction in similar situation); United States v. Santiago Miranda, 654 F.3d 130 (1st Cir. 2011) (same). Relying too heavily on the facts admitted in a plea colloquy could therefore threaten to deprive many defendants of the benefit of their bargains. See Taylor, 495 U.S. at 601-02 ("[I]f a guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary.").

In sum, even assuming that intentional ABDW is a separate, divisible form of Massachusetts ABDW, the record to which we are allowed to look does not plainly show that Kennedy pled guilty to that form of the offense. Mathis, 136 S. Ct. at 2257.

Therefore, Kennedy's ABDW conviction cannot serve as his third ACCA predicate and, since the government does not point to any other crime that could qualify, Kennedy was improperly sentenced as an armed career criminal. We therefore vacate the mandatory minimum sentence imposed by the district court and remand for resentencing without the ACCA enhancement.[3]

### III. Conclusion

For the foregoing reasons, we <u>affirm</u> Kennedy's conviction and <u>vacate</u> his sentence.

---

[3] Kennedy has also preserved an argument that, even if his ABDW convictions were for violent felonies under the ACCA, unless proven or admitted in this subsequent case, they cannot be used to increase the statutory minimum or maximum sentence that would otherwise apply. Setting aside that we are bound by <u>Almendarez-Torres</u> v. <u>United States</u>, 523 U.S. 224, 243–47 (1998), we need not reach this question due to our conclusion that Kennedy's ACCA sentence was improper on other grounds.