# United States Court of Appeals
## For the First Circuit

No. 16-1146

UNITED STATES OF AMERICA,

Appellee,

v.

BRIAN T. MULKERN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Jon A. Haddow, with whom Farrell, Rosenblatt & Russell was on brief, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

April 14, 2017

**THOMPSON**, <u>Circuit Judge</u>.

**Stage Setting**

Brian Mulkern pled guilty to a federal charge of possessing ammunition as a felon. <u>See</u> 18 U.S.C. § 922(g)(1). Normally the max prison sentence for an ammunition-possessing felon is 10 years. <u>See</u> 18 U.S.C. § 924(a)(2). But under the Armed Career Criminal Act ("ACCA," for short), a felon with three or more prior convictions for "violent felon[ies]" or "serious drug offense[s]" carried out "on occasions different from one another" *must* get at least 15 years. <u>See</u> <u>id.</u> § 924(e)(1). In addition to two concededly ACCA-qualifying Maine burglary convictions, Mulkern has a 2001 Maine robbery conviction and a 2004 Maine drug-trafficking conviction on his record. So when it came time for sentencing, the government argued for an ACCA enhancement. Mulkern argued against it, unsurprisingly. But siding with the government, the judge sentenced him to the statutory minimum of 15 years in jail.

Mulkern now appeals. And having reviewed the matter afresh,[1] we now vacate his sentence and remand for resentencing.

---

[1] <u>See</u> <u>United States</u> v. <u>Whindleton</u>, 797 F.3d 105, 108 (1st Cir. 2015), <u>cert. dismissed</u>, 137 S. Ct. 23 (2016), <u>and cert. denied</u>, 137 S. Ct. 179 (2016).

We will explain our thinking shortly — right after a quick tutorial on some ACCA-related rules.

**ACCA**

As just noted, ACCA requires mandatory sentences for recidivist criminals with three or more convictions for crimes — committed on different occasions — that qualify as predicate offenses. The government bears the burden of proving by a preponderance of the evidence that a defendant stands convicted of a particular crime. See United States v. Murdock, 699 F.3d 665, 672 (1st Cir. 2012).[2] And whether that crime is an ACCA-predicate offense is ultimately a legal question subject to *de novo* review. See, e.g., United States v. Hudson, 823 F.3d 11, 14 (1st Cir. 2016), cert. denied, 137 S. Ct. 620 (2017).

One type of ACCA-qualifying offense is a "violent felony," relevantly defined as "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another."[3] 18 U.S.C. § 924(e)(2)(B)(i). The phrase

---

[2] The preponderance standard, of course, "is a more-likely-than-not rule." See, e.g., United States v. Vixamar, 679 F.3d 22, 29 (1st Cir. 2012).

[3] This definition is known as the "force clause." United States v. Fields, 823 F.3d 20, 33 (1st Cir. 2016). ACCA also defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves

"physical force" means "force capable of causing physical pain or injury to another person."  Johnson v. United States ("Johnson I"), 559 U.S. 133, 140 (2010).

The other type of ACCA-qualifying offense is a "serious drug offense," pertinently defined as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law."[4]  18 U.S.C. § 924(e)(2)(A)(ii).  The word "involving" helps ACCA "capture[] more offenses than just those that 'are in fact' the manufacture, distribution, or possession of, with intent to distribute, a controlled substance" — i.e., thanks to "involving," the statute captures "'offenses that are related to or connected with such conduct'" as well.  See United States v. McKenney, 450 F.3d 39, 42, 43-44 (1st Cir. 2006) (quoting United States v. King, 325 F.3d 110, 113 (2d Cir. 2003)); see also Whindleton, 797 F.3d at 109.

---

conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  That subsection holds no sway here because neither robbery nor drug trafficking is a listed crime and because the Supreme Court invalidated the clause beginning with "or otherwise involves" — known as the "residual clause" — as unconstitutionally vague.  Johnson v. United States ("Johnson II"), 135 S. Ct. 2551, 2557 (2015).

[4] ACCA also defines serious drug offense "through reference to specific federal crimes," see Small v. United States, 544 U.S. 385, 392 (2005) — a definition irrelevant to this case.

- 4 -

Our judicial superiors have devised two ways for deciding whether a defendant's prior conviction satisfies ACCA — the categorical approach and the modified-categorical approach. Bear with us, because explaining these approaches is no walk in the park.

Under the categorical approach, the court assumes that the state statute of conviction "'rested upon [nothing] more than the least of th[e] acts' criminalized." See Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013) (quoting Johnson I, 559 U.S. at 137). The court then compares the state statute of conviction's elements to ACCA's definitions of "violent felony" or "serious drug offense." Cf. Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). And if there is a match, the state conviction is an ACCA predicate. See id. (citing, among other things, Taylor v. United States, 495 U.S. 575, 600-01 (1990)).

This comparison is difficult enough when the state statute lists "a single" — a.k.a., "'indivisible'" — body "of elements to define a single crime." See id. But some state statutes — a.k.a., "'divisible'" statutes — lay out "elements in the alternative, and thereby define multiple crimes," making the comparison of elements harder still. See id. at 2249. In that situation, courts employ the modified-categorical approach. See id. Under that method, the court looks beyond the statute of

- 5 -

conviction to a narrow "class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)" — known as Shepard documents — "to determine what crime, with what elements, a defendant was convicted of." Id. (citing Shepard v. United States, 544 U.S. 13, 26 (2005)). "The court can then compare that crime, as the categorical approach commands," with the pertinent ACCA definitions to see if the state conviction is ACCA eligible. See id.[5]

With these principles in place, we turn to whether Mulkern's Maine robbery and drug-trafficking convictions trigger the ACCA bump up. FYI: As the combatants correctly agree, Mulkern's convictions rest on divisible statutes. So we — as do the parties — apply the modified-categorical approach to this case.

### Mulkern's 2001 Robbery Conviction

*The Maine Statute*

At the time Mulkern pled guilty to robbery in 2001, the Maine legislature defined the crime as follows:

1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:

   A. He recklessly inflicts bodily injury on another;

   B. He threatens to use force against any person present with the intent

---

[5] For a thorough discussion of the categorical and modified-categorical approaches, see United States v. Faust, No. 14-2292, 2017 WL 1244844, at *6-9 (1st Cir. Apr. 5, 2017).

(1) to prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or

(2) to compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property;

C. He uses physical force on another with the intent enumerated in paragraph B, subparagraphs (1) or (2);

D. He intentionally inflicts or attempts to inflict bodily injury on another; or

E. He or an accomplice to his knowledge is armed with a dangerous weapon in the course of a robbery as defined in paragraphs A through D.

Me. Stat. tit. 17-A, § 651(1). According to the statutes in effect in 2001, violations of subparts A and B constituted Class B crimes (punishable by up to 10 years in prison), while violations of subparts C, D, and E constituted Class A crimes (punishable by up to 40 years in prison). See id. §§ 651(2), 1252(A) & (B).

*The Parties' Arguments*

The parties begin on common ground, agreeing that the relevant count in the 2001 Maine court indictment alleged the following:

[O]n or about July 04, 2001, in Pownal, Cumberland County, Maine, BRIAN MULKERN did attempt to commit theft by attempting to exercise unauthorized control over the property of the Short Stop store and/or [named victim], namely money, and at the time of his actions he threatened to use force against [named victim] with intent to compel her to give up the money, and he was

- 7 -

armed with a dangerous weapon during the course of the robbery.

The indictment's cover sheet listed section "651(1)(E)" as the charged offense, recording it as a Class A crime. Someone crossed out the "A" in "Class A crime" and replaced it with a "B," though this alteration is not signed or dated. Someone also crossed out "and he was armed with a dangerous weapon during the course of the robbery" and section "651(1)(E)" and signed and dated the crossed-out area (the signature is illegible, and the parties do not tell who did this). Without mentioning a subpart, the judgment form has a handwritten note that listed section "651" as the offense of conviction, recording it as a Class B crime — though the state docket sheet lists section 651(1)(A) as the offense of conviction.

Now to the key points of contention between the parties:

Insisting that he ultimately pled guilty to section 651(1)(B)(2), Mulkern principally relies on Raymond v. State, a Maine case holding that "*any* physical force" — *e.g.*, pulling a purse from a person's hand — is "sufficient force to convict of robbery." See 467 A.2d 161, 164-65 (Me. 1983) (discussing, among other things, Commonwealth v. Jones, 283 N.E.2d 840, 845 (Mass. 1972)). In other words, a "*de minimis* amount of force," Mulkern writes, suffices "to raise a crime of theft to one of robbery." Ergo, his theory concludes, robbery under Maine law is not a "violent felony" after Johnson I because section 651(1)(B)(2) does

- 8 -

not require the use of force "capable of causing physical pain or injury to another." See 559 U.S. at 140. Raymond dealt with robbery under section 651(1)(C), not section 651(1)(B). See 467 A.2d at 162-63. But Mulkern's argument appears to be that robbery under section 651(1)(B) — which requires a threat to use "force" — must mean a threat to use the same amount of force required for section 651(1)(C).

Hold on, says the government: Mulkern actually pled guilty to section 651(1)(C) — indeed, the government at oral argument adamantly opposed the notion that he had pled guilty to anything else. And as the government sees it, because section 651(1)(C) requires the "use[]" of "physical force" (a quote lifted from the statute), a violation of that provision "amounts to an ACCA felony" (a quote lifted from its brief). The government then talks up Jones, a *Massachusetts* case mentioned in Raymond. Jones noted that under the commonwealth's "statutes, as at common law, in order to sustain a charge of robbery, there must be proof of a larceny (1) 'from . . . (the) person,' and (2) 'by force and violence, or by assault and putting in fear.'" 283 N.E.2d at 843 (alteration in original) (footnote omitted) (quoting Mass. Gen. Laws ch. 277, § 39). Looking to parry Mulkern's purse-snatching/de-minimis-force argument, the government again quotes the Massachusetts high court in Jones:

> Snatching necessarily involves the exercise of some actual force. . . . [W]e hold that, where, as here, the actual force used is sufficient to produce awareness, although the action may be so swift as to leave the victim momentarily in a dazed condition, the requisite degree of force is present to make the crime robbery.

Id. at 845.  And, says the government, because robbery "requires" actual force, "robbery in violation of Maine law has as an element force and violence sufficient for purposes of Johnson I."

*Our Take*

We need not resolve the parties' dispute over which subpart of the robbery statute Mulkern pled guilty to violating — section 651(1)(B)(2) or section 651(1)(C).[6]  And we take this tack because, even assuming — as the government urges — that he pled

---

[6] In his robbery analysis, the district judge did not work through the parties' Shepard submissions to determine which section 651 subpart formed the basis of Mulkern's robbery conviction.  Instead, in deciding that Mulkern's "2001 robbery conviction constitutes a violent felony within the meaning of the ACCA," the judge simply relied on an order he had penned in a different case, United States v. Bishop, 350 F. Supp. 2d 127 (D. Me. 2004).  As relevant to our dispute, Bishop noted that the robbery charge there (involving section 651(1)(B)) "track[ed]" ACCA's "'violent felony'" definition — *i.e.*, "'any crime punishable by imprisonment for a term exceeding one year . . . that has as an element the . . . threatened use of physical force against the person of another'" — and concluded that "[i]t is simply beyond argument that robbery is a crime of violence."  Id. at 130 (quoting 18 U.S.C. § 924(e)(2)(B)).  But because the judge authored Bishop years before Johnson I, Bishop — to state the obvious — does not deal with Johnson I's holding that the type of "physical force" that comes within the relevant ACCA provision is "force capable of causing *physical pain or injury* to another person."  559 U.S. at 140 (emphasis added).

- 10 -

guilty to infracting section 651(1)(C), we believe his robbery conviction cannot be an ACCA predicate. Our reasoning is simple.

Section 651(1)(C), to repeat, criminalizes the "'use[]'" of "'physical force on another' with the intent either to prevent or overcome resistance to the taking of the property or to compel the person in control of the property to give it up." Raymond, 467 A.2d at 162 (quoting Me. Stat. tit. 18-A, § 651(1)(C)); see generally Johnson I, 559 U.S. at 138 (stressing that, in deciding whether a state conviction is a "violent felony" under ACCA, federal courts are "bound by the [state] Supreme Court's interpretation of state law, including its determination of the elements of" the statute of conviction). Maine's highest court recognizes that "*any* physical force" suffices to satisfy the "physical force" element in section 651(1)(C). See Raymond, 467 A.2d at 165. So, for example, "the mere act of snatching a purse from the hand of a victim" is thus "a sufficient act of physical force required for robbery," even if the robber never made "direct bodily contact" with the victim. Id. at 164, 165; see also State v. Rembert, 658 A.2d 656, 657 (Me. 1995).

Now we must compare section 651(1)(C)'s elements to the definition of "violent felony" in ACCA's force clause, keeping in mind that for a crime to be an ACCA "violent felony," it must involve "physical force," which "means *violent* force — that is,

- 11 -

force capable of causing physical pain or injury to another person." See Johnson I, 559 U.S. at 140. True, as the government notes, section 651(1)(C) talks about "physical force." But again — and we apologize for the repetition — in defining that element, Maine's top court proclaimed that "*any* physical force" with the required intent is enough "to raise" the "offense to the level of robbery." See Raymond, 467 A.2d at 165. The word "any" is a powerful beacon to us here, making clear that the crime does not require a showing of force "capable of causing physical pain or injury" — something short of that will do. Given Raymond, Mulkern's robbery conviction is not a "violent felony" for ACCA purposes.

And the government's argument about *Massachusetts* law does not alter this conclusion. Whatever the exact state of Massachusetts law may be — and we express *no* opinion here on that matter (zero, none, zip) — Raymond, as we said, is the beacon by which we steer our course. And Raymond, as we have been at pains to explain, flat-out held that "*any* physical force" with the specified intent elevates the crime to robbery, see 467 A.2d at 164 — a holding that compels us to hold that Mulkern's robbery conviction cannot be an ACCA predicate.

The net result is that Mulkern's 2001 conviction cannot provide the third predicate offense necessary to uphold his ACCA

sentence.[7]   So now we must see if his 2004 drug-trafficking conviction can — a task we turn to in the next part of this opinion.

### Mulkern's 2004 Drug-Trafficking Conviction

*The Maine Statute*

Everyone agrees that Shepard documents show Mulkern pled guilty in Maine state court to trafficking in "2 grams or more of heroin" in 2004.   Under the version of the statute to which he pled guilty — titled "Unlawful ***trafficking*** in scheduled drugs" — "a person is guilty of unlawful ***trafficking*** in a scheduled drug if the person intentionally or knowingly ***trafficks*** in what the person knows or believes to be a scheduled drug, which is in fact a scheduled drug."   See Me. Stat. tit. 17-A, § 1103(1-A) (emphases added).   The statute defines "traffick" this way:

    A.   To make, create, manufacture;

    B.   To grow or cultivate, except for marijuana;

---

[7] Mulkern has a few more arguments for the same result.  For example, pointing to the docket sheet, he suggests he might have been convicted under section 651(1)(A) — the "recklessly inflict[ing] bodily injury on another" provision.  He then says neither recklessly causing bodily injury nor mere causation of bodily injury is a violent felony — based on his reading of United States v. Fish, 758 F.3d 1 (1st Cir. 2014), and Whyte v. Lynch, 807 F.3d 463 (1st Cir. 2015), respectively.  Shifting gears, he also says "there is insufficient evidence in the record to conclude" that his 2001 robbery conviction "was committed on a different occasion than his 2001 qualifying burglary conviction" and that therefore both cannot be used to support the ACCA enhancement. But given our ruling on the robbery-conviction issue, we have no need to — and so *do not* — decide these issues here.

- 13 -

C.  To sell, barter, trade, exchange or otherwise furnish for consideration;

D.  To possess with the intent to do any act mentioned in paragraph C; or

E.  To possess 2 grams or more of heroin or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing heroin.

Id. § 1101(17).  If the drug trafficked is a "schedule W drug" — which heroin, then statutorily defined as "any compound, mixture[,] or preparation containing heroin," unquestionably is — then a violation of this statute is a "Class B crime."  See id. §§ 1103(1-A)(A), 1102(1)(I).  And a Class B crime carries a max penalty of 10 years in jail.  See id. § 1252(2)(B).

*The Parties' Arguments*

Mulkern's argument for why this conviction is not a countable ACCA predicate is straightforward enough.  As he sees things, he did not pled guilty to a "serious drug crime" — defined for our purposes (remember) as "involving" possession of a controlled substance "with intent to manufacture or distribute." And he quickly adds that the pertinent trafficking statute — dealing with the 2 grams or more of heroin — criminalizes possession with *no* intent to manufacture or distribute.  All that is required, he says, is that the possessor possessed the requisite amount of heroin — and nothing in the Shepard documents, he writes,

- 14 -

shows he pled guilty to intending to manufacture or distribute heroin either.

Stressing that we must interpret "involving" expansively, see Whindleton, 797 F.3d at 109, the government counters that the statute of conviction need not match up word for word with ACCA's definitions to qualify as a "serious drug offense." So, the government writes, it is of no moment that the state statute here "does not require proof of intent to distribute" — what matters is whether the pled-to offense "involv[es]" (in ACCA lingo) "possess[ion] with intent to . . . distribute."

Building on this foundation, the government then argues that we must conclude that Mulkern's trafficking conviction "involv[ed]" an intent to distribute. It offers two reasons why. The first reason turns on the "trafficking" name Maine's legislature used for the at-issue statute: "trafficking" is synonymous with distribution, the government suggests, so from the legislature's "trafficking" label we can infer that Mulkern's crime here "involv[es]" the required distributive intent. The second reason turns on the statute's saying that 2 or more grams of heroin can support a drug-trafficking conviction: relying chiefly on Eleventh Circuit case law, the government implies that this drug amount justifies the inference that Mulkern possessed the heroin with intent to distribute, rather than for his personal

- 15 -

use.  See United States v. James, 430 F.3d 1150, 1155, 1156 (11th Cir. 2005) (inferring intent to distribute from the defendant's copping "to trafficking in cocaine by possess[ing] . . . between 200 and 400 grams of the drug"), overruled on other grounds by Johnson II, 135 S. Ct. 2251.

Not about to go down without a fight, Mulkern argues that reading "involving" broadly helps the government not a whit because "it would stretch" that word "beyond its breaking point" to hold that "a state conviction for trafficking by possession alone" — *i.e.*, possession *without* intent to distribute — is a conviction "involving" possession *with* intent to distribute.  And he highlights Fourth Circuit caselaw to support the idea that one cannot infer that he had the requisite intent either from Maine's designating the pled-to crime as "trafficking" or from the small amount of heroin in play.  See United States v. Brandon, 247 F.3d 186, 196-97 (4th Cir. 2001) (emphasizing that, per Taylor, an ACCA enhancement "appl[ies] to those who have engaged in certain specific conduct, regardless of the label attached to that conduct by state law," and concluding that "because we cannot say that intent to manufacture or distribute is inherent" in the class of conduct banned "by the statute and alleged in the indictment at issue in this case (possession of between twenty-eight and two

- 16 -

hundred grams of cocaine)," the defendant's state drug-trafficking conviction was not an ACCA "serious drug offense").

*Our Take*

As we said many pages ago, ACCA pertinently defines "violent felony" as a felony that "has as an **element** the use, attempted use, or threatened use of physical force." See 18 U.S.C. § 924(e)(2)(B)(i) (emphases added). Contrastingly, ACCA relevantly defines "serious drug offense" as crimes "**involving** . . . possess[ion] with intent to . . . distribute." Id. § 924(e)(2)(A)(ii) (emphases added). The word "'involv[es],'" we have held, "mean[s] something other than" — indeed, something "broader than" — "'has as an element.'" McKenney, 450 F.3d at 43 (emphasizing that, among other things, "[t]o 'involve' . . . means 'to relate closely,' . . . or to 'connect closely'" (citations omitted)). And because of the drafter's use of "involv[e]" rather than "element[s]," a crime that does not have possession with intent to distribute as a formal element can qualify as a "serious drug offense" if it involves possession with intent to distribute. See id. (discussing Brandon, 247 F.3d at 190).

The question then is whether the government met its burden of satisfying this "serious drug offense" definition. The government says it has, arguing (as we noted above) that we can infer that the crime here "involv[es]" distributive intent both

- 17 -

from the statute's calling the offense "trafficking" and from Mulkern's possessing 2 or more grams of heroin. But like Mulkern, we think neither argument does the trick.

Take the government's first claim (which it really stressed at oral argument) — that one can infer Mulkern's pled-to drug crime "involv[es]" possession with intent to distribute from the simple fact that the Maine legislature designates the copped-to crime as "trafficking," a descriptor, the theory continues, that denotes buying and selling. What devastates this argument is that the Supreme Court has already rejected a similar contention: as Taylor explains, the meaning of ACCA's terms do not "depend on the definition adopted by the State of conviction," because to hold otherwise would mean (for instance) that persons "convicted of unlawful possession of a firearm" might or might not get ACCA enhancements "depending on [how] the State of [the] prior conviction" labeled the crime — a result that would clash with Congress's desire to avoid inconsistencies in punishment. See 495 U.S. at 590-91; see also Brandon, 247 F.3d at 196 (reading Taylor essentially the same way).

And the government does no better with its second argument — that one can infer Mulkern's pled-to drug crime "involv[es]" possession with intent to distribute from his possessing 2 grams or more of heroin. We have never "held that a

- 18 -

conviction for trafficking based on the possession of a certain quantity of drugs" is an ACCA "serious drug offense." United States v. White, 837 F.3d 1225, 1233-34 (11th Cir. 2016) (noting the absence of First Circuit precedent on this issue). But even assuming without deciding "that a statute classifying possession of a certain quantity of drugs [is] sufficient to indicate an intent to distribute," see id. at 1234, we think the government's argument still falls short. Here is why.

Drug distribution poses "a greater threat to society" than mere drug use — "though both constitute great dangers," and it is perfectly sensible "to assume" that persons possessing "very large" drug quantities "intend to distribute" them. Brandon, 247 F.3d at 192. That "very reasonable assumption" is probably why lots of states have trafficking laws "severely punish[ing] possession of large quantities of drugs without making" distributive intent "an element of the crime." Id. The difficult question is what is the right amount of drugs a person must possess "before this presumption of an intent to distribute is appropriate" — that this is so is "evidenced by the widely varying quantities that states have established as the threshold for a trafficking-by-possession conviction." Id. (noting, for example, that "possession of five grams of cocaine is considered trafficking in Delaware," while "possession of more than one hundred and fifty

- 19 -

grams" is considered "trafficking in Missouri"). Obviously, "society's comfort level in equating possession to possession-with-intent increases as the quantity of drugs possessed increases, and it decreases as the quantity . . . decreases" — though also obviously, "some defendants possess very small quantities of drugs for the sole purpose of distributing them and . . . some defendants possess significant quantities" simply "for personal use." Id. So while the amount "of drugs possessed can serve as an indicator of the purposes for which the drugs were possessed, at certain levels it is a rough and imprecise indicator at best." Id.

Moving from the general to the specific, even assuming *arguendo* that the government is correct about inferring distributive intent from drug-quantity levels, we think that the crime for which Mulkern stands convicted would not come close to raising this inference. Consider James, a case the government relies on. There, a sibling circuit concluded that a statute of conviction classifying possession of between 200 and 400 grams of cocaine as trafficking gave rise to an inference of distributive intent. See 430 F.3d at 1152-56. But Mulkern's case is worlds apart from James. Here, unlike there, the quantity at the lower end of the statute of conviction — 2 grams of heroin — is "not so large that the *only* reasonable inference is that one who possesses

- 20 -

that amount must intend to distribute it." See Brandon, 247 F.3d at 192 (emphasis added). Actually, Mulkern could have been convicted for possessing *less* than 2 grams. And that is because the statute — as it stood at time of his 2004 trafficking conviction — "define[d] the crime as prohibiting trafficking in two grams or more *of any mixture containing heroin*." See State v. Pinkham, 137 A.3d 203, 208 (Me. 2016) (emphasis added). So — still assuming without granting that the government's right about deducing distributive intent from drug-quantity amounts — given the range of drug quantities covered by this law, we simply cannot rule "that the typical conduct reached by that statute inherently involves an intent to . . . distribute." See Brandon, 247 F.3d at 193. And we are doubly persuaded that this is right since — despite having the burden of proving what he stands convicted of — the government offers no authority or persuasive argument suggesting that the 2-gram threshold justifies an inference of intent to distribute.

The bottom line is that Mulkern's drug-trafficking conviction does not qualify as an ACCA-predicate "serious drug offense." And that is that.

## Wrap Up

Because neither the 2001 robbery conviction nor the 2004 trafficking conviction qualifies as an ACCA predicate, we ***vacate***

Mulkern's sentence and **_remand_** for resentencing without the ACCA enhancement.