# United States Court of Appeals
## For the First Circuit

No. 20-1267

TREZJUAN THOMPSON,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Kayatta, Lynch, and Howard,
Circuit Judges.

Seth Kretzer, with whom Law Offices of Seth Kretzer was on brief, for appellant.
Lindsay B. Feinberg, Assistant United States Attorney, with whom Darcie N. McElwee, United States Attorney, was on brief, for appellee.

April 11, 2023

**LYNCH**, **Circuit Judge**. In 2011, Trezjuan Thompson pleaded guilty in the U.S. District Court for the District of Maine to two counts of conspiracy to distribute a substance containing cocaine base and one count of malicious damage or destruction of property by fire. During sentencing in that case in 2013, the court determined that Thompson was a "career offender" within the meaning of the U.S. Sentencing Guidelines ("Guidelines"), a designation which increased his advisory Guidelines Sentencing Range ("GSR"). See U.S. Sent'g Guidelines Manual § 4B1.1 (U.S. Sent'g Comm'n 2010) [hereinafter U.S.S.G.]. The court's conclusion that this enhancement applied rested in part on its determination that Thompson's 2007 Maine state court conviction for unlawful trafficking in scheduled drugs qualified as a "controlled substance offense" under the Guidelines -- a determination to which Thompson's counsel did not object. See id. §§ 4B1.1-.2.

In this collateral challenge to his sentence under 28 U.S.C. § 2255, Thompson contends that he received constitutionally ineffective assistance of counsel at his 2013 sentencing based on his counsel's failure to object to the use of the Maine drug conviction as a predicate offense for the career offender enhancement. The district court denied Thompson's § 2255 motion. United States v. Thompson, No. 10-cr-200, 2020 WL 86446, at *2 (D. Me. Jan. 7, 2020). We hold that Thompson has not met his burden

of showing that his counsel's performance was deficient, and affirm.

## I.

## A.

In December 2010, a federal grand jury sitting in the District of Maine returned a six-count indictment charging Thompson with, inter alia, two counts of conspiracy to distribute and possess with intent to distribute a substance containing five grams or more of cocaine base, see 21 U.S.C. §§ 841(a)(1), 846, and one count of malicious damage or destruction of property by fire (i.e., arson), see 18 U.S.C. § 844(i).[1]

In May 2011, Thompson, represented by counsel, pleaded guilty to the two drug conspiracy counts and the arson charge.[2] During his plea colloquy, Thompson affirmed that the prosecution version of the facts was accurate. The prosecution version specified that each of the drug conspiracies involved twenty-eight

---

[1] The indictment also charged Thompson with two counts of using a communication facility to commit a drug felony, see 21 U.S.C. § 843(b), and one count of possession of an unregistered firearm, see 26 U.S.C. § 5861(d).

[2] Although the plea was not pursuant to a formal plea agreement, Thompson's counsel represented in a later hearing before a magistrate judge that the government had "offered" to dismiss the remaining counts, as well as a felon-in-possession-of-a-firearm charge against Thompson under a separate indictment, if Thompson were to plead guilty to these three counts. Consistent with this representation, the government moved to dismiss the remaining counts and the separate indictment after the district court sentenced Thompson. The court granted the motion.

- 3 -

grams or more of cocaine base -- more than the five grams charged in the indictment. It also stated that the property targeted by Thompson in the arson offense was an apartment that Thompson's former live-in girlfriend, who had obtained a state court protection from abuse order against Thompson, shared with her two minor children.

The initial presentence report produced following Thompson's guilty plea concluded that Thompson was subject to the career offender enhancement set forth in Guidelines section 4B1.1. Application of the enhancement increased Thompson's criminal history category and the base offense level for the drug conspiracy counts and lengthened his advisory GSR. See U.S.S.G. § 4B1.1; id. ch. 5, pt. A (setting GSRs based on criminal history categories and offense levels). As explained in more detail below, the enhancement requires that "the defendant ha[ve] at least two prior felony convictions of either a crime of violence or a controlled substance offense." Id. § 4B1.1. The presentence report concluded that this condition was satisfied by two of Thompson's prior state court convictions: a 2006 Massachusetts conviction for assault and battery with a dangerous weapon ("ABDW") and a 2007 Maine conviction for unlawful trafficking in scheduled drugs.

Thompson's counsel objected that the Massachusetts ABDW conviction did not qualify as "a crime of violence" as defined in the Guidelines, relying on then-recent First Circuit case law

- 4 -

interpreting a similar provision in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). See United States v. Dancy, 640 F.3d 455 (1st Cir. 2011); United States v. Holloway, 630 F.3d 252 (1st Cir. 2011).[3] During a presentence conference in September 2011, Thompson's counsel informed the district court that an ACCA case involving "the exact same issue" raised in this objection was then pending before this court.[4] See United States v. Hart, 674 F.3d 33 (1st Cir. 2012).[5] On Thompson's counsel's motion, the court continued sentencing pending this court's decision in Hart.

Thompson's counsel did not challenge the use of the Maine drug conviction as a predicate offense. At the same presentence conference, Thompson's counsel represented to the court that he had "t[aken] a look at the law on this and . . . th[ought he] ha[d] a feel for it," and that Thompson "ha[d]n't admitted to the information yet for [the] prior conviction, [but] he intend[ed]

---

[3]    Dancy and Holloway both involved the ACCA's "residual clause," which the Supreme Court has since held unconstitutional on vagueness grounds. Johnson v. United States, 576 U.S. 591, 606 (2015); see Dancy, 640 F.3d at 467-70; Holloway, 630 F.3d at 260-62.

[4]    Thompson's counsel also represented to the court that "Thompson's family ha[d] been in touch" with a Massachusetts lawyer to assess whether there was a state law basis for challenging Thompson's Massachusetts conviction.

[5]    Like Dancy and Holloway, Hart involved the ACCA's "residual clause," since held unconstitutionally vague by the Supreme Court. Johnson, 576 U.S. at 591; see Hart, 674 F.3d at 40-44.

to." Thompson's counsel added: "I don't think that's in dispute." While Hart was pending, Thompson's first attorney withdrew as counsel. The court appointed a new attorney to serve as defense counsel.

In March 2012, this court issued its opinion in Hart, holding, unfavorably to Thompson's position, that a Massachusetts ABDW conviction qualified as a predicate offense for ACCA purposes. See 674 F.3d at 44. Shortly thereafter, Thompson's second attorney withdrew as counsel. The court appointed a third attorney to serve as Thompson's counsel.

Represented by this third attorney, Thompson moved to withdraw his guilty plea. The district court denied the motion in April 2013.

Thompson's third attorney advanced several arguments on Thompson's behalf during sentencing in 2013. The third attorney preserved Thompson's objection to the use of the Massachusetts ABDW conviction as a predicate offense, although he acknowledged that "the Hart decision was on point" and success on this score would require that that decision be overruled. The district court ruled that the career offender enhancement applied based on both the Massachusetts ABDW conviction and the Maine drug conviction.

Defense counsel also argued that Thompson's offense level and, as a result, his GSR should be reduced to reflect his acceptance of responsibility through his guilty plea. See U.S.S.G.

§ 3E1.1. The final presentence report took the position that Thompson was not entitled to an acceptance-of-responsibility adjustment because he "ha[d] failed to withdraw from criminal conduct and ha[d] new criminal charges since his incarceration." See id. § 3E1.1 cmt. n.1(B). Thompson's counsel argued that the government had failed to substantiate the allegations of new criminal conduct and that Thompson should receive the adjustment, and cross-examined the witnesses offered by the government during the sentencing hearing to prove the alleged criminal conduct. The court found that the government had sufficiently supported the allegations of new criminal conduct and that an adjustment for acceptance of responsibility was unwarranted.

Thompson's third attorney further argued that, under the Supreme Court's then-recent decision in Alleyne v. United States, 570 U.S. 99 (2013), and its earlier decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), Thompson's GSR and statutory minimum sentence for the drug conspiracy counts had to be based on the five grams of cocaine base charged in the indictment, rather than the higher quantity of twenty-eight grams admitted by Thompson during his plea colloquy and used in the presentence report's calculations. The district court ultimately declined to resolve this issue, making alternative findings as to the appropriate GSR and stating that it would impose the same sentence under either GSR.

Finally, defense counsel made several arguments in favor of a downward variant sentence. Counsel observed that the Maine drug conviction had triggered multiple enhancements under the Guidelines, and that the court should consider this "double counting" when determining Thompson's sentence. Counsel also emphasized to the court various mitigating factors from Thompson's background, including his father's history of incarceration; Thompson's educational, mental health, and substance abuse problems; and Thompson's efforts to take advantage of educational and treatment opportunities while incarcerated pending sentencing. The court noted, when pronouncing Thompson's sentence, that it had "take[n] . . . into account" as "ameliorating things" Thompson's "difficult childhood" and "mental and emotional issues."

The district court imposed a sentence of 327 months' imprisonment on the conspiracy charges (below the GSR recommended in the presentence report) and 240 months' imprisonment on the arson charge, to be served concurrently. It reasoned that this sentence was within the GSR if Thompson's Alleyne argument was correct, and was an appropriate downward variance, based on mitigating factors concerning "the defendant's upbringing and childhood" and other statutory sentencing factors, if the defense's interpretation of Alleyne was incorrect.

On direct appeal, this court affirmed Thompson's conviction and sentence. United States v. Thompson, 851 F.3d 129,

132 (1st Cir. 2017) (per curiam). The panel rejected arguments advanced by Thompson's appellate counsel regarding the voluntariness of Thompson's plea and the use of his Massachusetts ABDW conviction as a career offender predicate offense. See id. at 130-31. Those points are not at issue in this collateral proceeding. Thompson also submitted a supplemental pro se brief raising various additional arguments, which the panel "decline[d] to address . . . specifically," id. at 130 n.2, because they "lack[ed] arguable merit," id. (quoting United States v. Rose, 802 F.3d 114, 117 (1st Cir. 2015)).[6]

**B.**

In spring 2018, Thompson filed a timely pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.[7] The motion challenged Thompson's guilty plea and sentence on an array of grounds. The motion argued, in part, that Thompson had received ineffective assistance of counsel during the

---

[6] Thompson's pro se brief at times referenced the career offender enhancement and, arguably, his Maine drug conviction. We do not read the brief, however, as challenging the use of the Maine drug conviction as a career offender predicate offense or as alleging ineffective assistance of counsel based on failure to make that argument in the district court. Nor does the government develop any argument that this court's decision on Thompson's direct appeal resolved either issue in a way that affects this appeal.

[7] Thompson filed an unsigned motion in March 2018. The district court ordered him to file a signed motion, which he did in April 2018.

2013 sentencing because "any competent effective counsel" would have challenged the use of his Maine drug conviction as a predicate offense for the career offender enhancement. In support of this assertion, Thompson cited this court's decision in United States v. Mulkern, 854 F.3d 87 (1st Cir. 2017), decided nearly four years after his sentencing. The government opposed the motion.

A magistrate judge recommended that the district court deny the motion. Thompson v. United States, No. 10-cr-00200, 2019 WL 2453643, at *6 (D. Me. June 12, 2019). The magistrate judge reasoned that the ineffective assistance claim failed "because an attorney's failure to anticipate a change in the law does not constitute deficient performance or cause prejudice." Id. at *5 n.9. Thompson filed an objection to this recommendation that renewed his ineffectiveness argument, and the government filed a response.

The district court adopted the magistrate judge's recommendation and denied Thompson's motion.[8] Thompson, 2020 WL 86446, at *2. The court declined to issue a certificate of appealability because it concluded that Thompson had not made a

---

[8] The district court denied the motion without holding an evidentiary hearing. Thompson, 2020 WL 86446, at *2. The magistrate judge had concluded that such a hearing was unwarranted. Thompson, 2019 WL 2453643, at *6. Thompson did not challenge the decision not to hold an evidentiary hearing in his request for a certificate of appealability, and he does not mention the issue in his brief, so we do not consider the matter.

"substantial showing of the denial of a constitutional right." Id. (citing 28 U.S.C. § 2253(c)(2)).

Thompson then requested that this court grant a certificate of appealability. This court granted that request with respect to a single issue: "[W]hether counsel provided constitutionally ineffective assistance by failing to argue that Thompson's [Maine drug conviction] did not qualify as a 'controlled substance offense' for purposes of U.S.S.G. § 4B1.2(b)." This court also granted Thompson's request for the appointment of counsel to represent him in this appeal.

## II.

In reviewing the denial of a § 2255 motion alleging ineffective assistance of counsel, we assess the district court's legal conclusions de novo and its factual findings for clear error. Fernandez-Garay v. United States, 996 F.3d 57, 61 (1st Cir. 2021).

We first lay out relevant law regarding the career offender enhancement and the Maine statute underlying Thompson's prior drug conviction. We then analyze Thompson's ineffective assistance claim.

## A.

The career offender enhancement, which imposes increased criminal history categories and base offense levels on qualifying defendants, appears in section 4B1.1 of the Guidelines:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a); see id. § 4B1.1(b) (listing effects of enhancement). The first two conditions, as well as the status of Thompson's Massachusetts ABDW conviction as a predicate "crime of violence," are not at issue in this appeal, which concerns only the purported ineffectiveness of Thompson's counsel in failing to argue that Thompson's Maine drug conviction did not qualify as a predicate "controlled substance offense."

"[C]ontrolled substance offense" is defined in Guidelines section 4B1.2:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Id. § 4B1.2(b); see id. § 4B1.1 cmt. n.1 (cross-referencing this definition); see also United States v. Bryant, 571 F.3d 147, 157 (1st Cir. 2009) (explaining that this definition "requires that

- 12 -

the statute under which the defendant was charged involves an intent to distribute or other indicia of trafficking").

To assess whether a state conviction qualifies as a "controlled substance offense" under this definition, a "court should use a categorical or modified categorical approach." United States v. Mohamed, 920 F.3d 94, 101 (1st Cir. 2019); see, e.g., Bryant, 571 F.3d at 156-59, 157 n.7 (applying categorical approach to career offender enhancement). In applying the categorical approach, rather than looking at the actual facts of the defendant's prior offense, the court "must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized [by the statute of conviction], and then determine whether" those acts satisfy the sentencing enhancement's requirements. Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013) (first and second alterations in original) (quoting Johnson v. United States, 559 U.S. 133, 137 (2010)).

When the statute of conviction "contains statutory phrases that cover several different generic crimes, some of which [would categorically trigger the sentencing enhancement] and some of which [would] not," courts may apply the "modified categorical approach" and "determine which statutory phrase was the basis for the conviction by consulting the trial record -- including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and

jury instructions and verdict forms."  Johnson, 559 U.S. at 144. Such documents are referred to as Shepard documents, after the Supreme Court's decision in Shepard v. United States, 544 U.S. 13 (2005).  See, e.g., Hart, 674 F.3d at 41.  If the Shepard documents "do not identify the offense of conviction, . . . the conviction may only serve as a predicate offense if each of the possible offenses of conviction would qualify as a [predicate offense]." Holloway, 630 F.3d at 257 (citing Shepard, 544 U.S. at 26).

At the 2013 sentencing, the government offered as proof of Thompson's Maine drug conviction a copy of a judgment dated March 13, 2007, from a Maine superior court, which specified that Thompson pleaded guilty to one count of "Unlawful Trafficking of Scheduled Drugs, Class B" under Maine Revised Statutes Annotated title 17-A, section 1103, with a "[d]ate of [v]iolation(s)" of June 5, 2006.  A class B crime in Maine carries a sentence of up to ten years' imprisonment, greater than the more-than-one-year sentence required to qualify as a controlled substance offense. See Me. Rev. Stat. Ann. tit. 17-A, § 1604(1)(B) (West Supp. 2022);[9] U.S.S.G. § 4B1.2(b).

_____

[9]    At the time of Thompson's offense and conviction, the ten-year maximum penalty for Class B crimes was codified in a different section but was substantively the same.  See Me. Rev. Stat. Ann. tit. 17-A, § 1252(2)(B) (West 2006), repealed by 2019 Me. Laws ch. 113, § A-1.

- 14 -

The relevant portion of the statute of conviction, section 1103, describes multiple "Class B crime[s]":

> [A] person is guilty of unlawful trafficking in a scheduled drug if the person intentionally or knowingly trafficks in what the person knows or believes to be a scheduled drug, which is in fact a scheduled drug, and the drug is:
>
> A.    A schedule W drug.  Violation of this paragraph is a Class B crime; . . .
>
> C.    Marijuana in a quantity of 20 pounds or more.  Violation of this paragraph is a Class B crime;
>
> D.    Marijuana and the person grows or cultivates 500 or more plants. Violation of this paragraph is a Class B crime . . . .

Me. Rev. Stat. Ann. tit. 17-A, § 1103(1-A) (West 2006).  Schedule W includes a number of drugs, including cocaine and heroin.  See id. § 1102(1).

At the time of Thompson's drug offense and conviction, Maine law defined "Traffick" to mean:

> A.    To make, create, manufacture;
>
> B.    To grow or cultivate, except for marijuana;
>
> C.    To sell, barter, trade, exchange or otherwise furnish for consideration;
>
> D.    To possess with the intent to do any act mentioned in paragraph C; or
>
> E.    To possess 2 grams or more of heroin or 90 or more individual bags, folds,

- 15 -

> packages, envelopes or containers of any
> kind containing heroin.

Id. § 1101(17), amended by 2021 Me. Laws ch. 396, § 1.[10]

In 2017, roughly four years after Thompson's 2013 sentencing, this court decided Mulkern. See 854 F.3d 87. Applying the modified categorical approach, this court held that a conviction for "trafficking" heroin under section 1103 did not qualify as a "serious drug offense" under the ACCA -- that is, as relevant here, an offense that "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii); see Mulkern, 854 F.3d at 95-97. This was because the statutory definition of "traffick[ing]" in heroin included simple possession of two grams or more without any intent to manufacture or distribute. See Mulkern, 854 F.3d at 94-97; Me. Rev. Stat. Ann. tit. 17-A, § 1101(17)(E). The government does not appear to dispute that, after Mulkern, a conviction under section 1103 for trafficking heroin during the time period of Thompson's Maine drug conviction would not qualify as a controlled substance offense. See U.S.S.G. § 4B1.2(b) (restricting controlled substance offenses to offenses that "prohibit[] the manufacture, import, export, distribution, or dispensing of a controlled

---

[10] The statute has since been amended to eliminate subsection (E). See 2021 Me. Laws ch. 396, § 1.

- 16 -

substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense"); see also Bryant, 571 F.3d at 157 (explaining that "the definition of 'controlled substance offense' requires that the statute under which the defendant was charged involves an intent to distribute or other indicia of trafficking").

Two years later, in Mohamed, this court held that a conviction under section 1103 for trafficking cocaine did qualify as a controlled substance offense under the Guidelines. See 920 F.3d at 99-105. The upshot is that "a conviction under [section 1103] for trafficking heroin [at the time of Thompson's offense and conviction] . . . does not categorically qualify" as a controlled substance offense because a defendant could have been convicted for simple possession without intent to distribute. United States v. Mulkern, 49 F.4th 623, 633 (1st Cir. 2022) (summarizing these decisions in ACCA context). But "in the case of cocaine (and most other controlled substances), Maine's statutory regime does require the jury to find distributive intent," and so a trafficking conviction involving those drugs does "categorically qualif[y]" as a controlled substance offense. Id. This case law concerning Maine's trafficking statute did not, however, exist at the time of Thompson's sentencing in 2013.

- 17 -

**B.**

We turn to the merits of Thompson's appeal. To succeed in his claim of ineffective assistance of counsel, Thompson "must show both deficient performance by counsel and resulting prejudice." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Our analysis begins and ends with the deficiency prong.

Demonstrating deficient performance requires Thompson to establish that his "counsel's representation 'fell below an objective standard of reasonableness.'" Id. (quoting Strickland, 466 U.S. at 688). "Review of counsel's performance must be deferential, and reasonableness must be considered in light of 'prevailing professional norms.'" Id. (quoting Strickland, 466 U.S. at 688). "There are countless ways to provide effective assistance in any given case," Strickland, 466 U.S. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Tevlin, 621 F.3d at 66 (quoting Strickland, 466 U.S. at 689); see also id. ("[A party claiming ineffective assistance of counsel] must overcome the presumption that . . . the challenged action might be considered sound trial strategy." (internal quotation marks omitted) (omission in original) (quoting Strickland, 466 U.S. at 689)). As a result, "[a]n attorney's performance is deficient . . . 'only where, given the facts known at the time,

counsel's choice was so patently unreasonable that no competent attorney would have made it.'" Vargas-De Jesús v. United States, 813 F.3d 414, 417-18 (1st Cir. 2016) (quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)).

Thompson contends that his counsel performed deficiently at his 2013 sentencing under this standard by failing to object to the use of the Maine drug conviction as a career offender predicate offense. He argues that, under Mulkern's reasoning, not every Maine trafficking conviction qualifies as a controlled substance offense, and asserts that any "reasonable defense lawyer" would have objected under the circumstances of Thompson's sentencing, since the state court judgment offered by the government to prove the Maine drug offense did not specify "the quantity or type of drug that Thompson trafficked in." We note that, had the state court judgment specified the type of drugs trafficked, the Mulkern argument now made would fail if that drug were not heroin. Although Thompson acknowledges that Mulkern was not decided until 2017, nearly four years after his 2013 sentencing, he asserts that earlier precedent applying the categorical approach, such as the Supreme Court's decision in Shepard, sufficed to put defense counsel on notice of the principles underlying the decision. We reject Thompson's argument for several reasons.

First, the line of cases beginning with Mulkern on which Thompson relies did not exist at the time of his sentencing in

2013. "Absent 'unusual circumstances,' 'the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law.'" United States v. Castillo-Martinez, 16 F.4th 906, 918 (1st Cir. 2021) (quoting Powell v. United States, 430 F.3d 490, 491 (1st Cir. 2005) (per curiam)); see also Strickland, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time."). Based on the law as it existed at the time of Thompson's sentencing, we cannot say that the failure to anticipate Mulkern's holding and challenge the use of the Maine drug conviction as a predicate offense on that basis was "so patently unreasonable that no competent attorney would have" acted similarly. Vargas-De Jesús, 813 F.3d at 418 (quoting Knight, 447 F.3d at 15).

It is true, as Thompson points out, that the Supreme Court had introduced the categorical and modified categorical approaches prior to Thompson's sentencing. See, e.g., Shepard, 544 U.S. at 16-23. But the existence of this high-level framework does not make Mulkern a straightforward application of existing law that any competent counsel would have anticipated. Thompson does not argue that any binding precedent existed that applied the categorical or modified categorical approach to the Maine trafficking statute or to a similar statute in the context of the

career offender enhancement and concluded that the statute, or any of its subdivisions, categorically did not satisfy the enhancement, such as would have previewed Mulkern's reasoning. Case law from other circuits involving arguably similar state statutes was mixed. Cf. Vargas-De Jesús, 813 F.3d at 418 (finding counsel was not deficient in not raising a potential claim in part because case law, including "out-of-circuit precedent," was "hardly favorable" toward that claim at the time). Compare United States v. Madera-Madera, 333 F.3d 1228, 1230-34 (11th Cir. 2003) (concluding that conviction under state statute that classified possession of specified quantity of heroin as "trafficking" satisfied Guidelines provision similar to definition of controlled substance offense), and United States v. James, 430 F.3d 1150, 1153-56 (11th Cir. 2005) (reasoning similarly in ACCA context), aff'd on other grounds, 550 U.S. 192 (2007), and overruled on other grounds by Johnson v. United States, 576 U.S. 591 (2015), with, e.g., United States v. Brandon, 247 F.3d 186, 191-97 (4th Cir. 2001) (declining to infer intent to distribute, for purposes of sentencing enhancement, from state "trafficking" statute that criminalized simple possession of a small quantity of cocaine), and United States v. Lopez-Salas, 513 F.3d 174, 179-81 (5th Cir. 2008) (similar). Mulkern itself reversed a district court decision that reached the opposite result in applying the modified categorical approach to the Maine statute. See 854 F.3d at 89.

Nor has Thompson provided any other evidence or argument that, at the time of his 2013 sentencing, challenging the Maine drug conviction's predicate status in hopes of obtaining a ruling like Mulkern would have been standard practice among defense counsel. Cf. Strickland, 466 U.S. at 688 (discussing use of "American Bar Association standards and the like" as tools for measuring deficiency).

And, to the extent counsel could have anticipated that a ruling like Mulkern may have been possible, a speculative challenge to the use of the Maine drug conviction as a predicate offense would have presented strategic risks. Cf. Vargas-De Jesús, 813 F.3d at 418-19 (describing strategic reasons for counsel's declining to raise speculative legal argument). Drawing the sentencing court's attention to, and potentially prompting the government to offer more documentation of the specific drugs involved in, Thompson's Maine drug offense would risk counsel's efforts to focus the court on mitigating factors. Cf., e.g., Old Chief v. United States, 519 U.S. 172, 185-86 (1997) (explaining strategic reasons why defendant at trial may prefer to stipulate to past conviction that is element of charged offense, rather than have government present evidence of past conduct to jury).

Further, since "the Strickland standard . . . 'reflects the reality that lawyers do not enjoy the benefit of endless time, energy[,] or financial resources,'" "competent defense counsel is

'entitled . . . to balance limited resources in accord with effective . . . strategies,'" <u>Bucci</u> v. <u>United States</u>, 662 F.3d 18, 31 (1st Cir. 2011) (first quoting <u>Rogers</u> v. <u>Zant</u>, 13 F.3d 384, 387 (11th Cir. 1994); and then quoting <u>Harrington</u> v. <u>Richter</u>, 562 U.S. 86, 107 (2011)), and is not required to "raise every conceivable . . . claim," <u>id.</u> (quoting <u>Engle</u> v. <u>Isaac</u>, 456 U.S. 107, 134 (1982)); <u>see also</u> <u>Peralta</u> v. <u>United States</u>, 597 F.3d 74, 82 (1st Cir. 2010) (per curiam) (reasoning that "counsel inevitably must decide where to focus his or her efforts" and concluding that counsel's reasonable decision about how to allocate resources did not constitute deficient performance). Defense counsel could reasonably have concluded that time and resources were better spent developing the other arguments made at sentencing, and that Thompson's interests were best served by keeping the court's attention on those potentially stronger arguments.[11]

Second, in any event, Thompson has not established that his counsel performed deficiently even under <u>Mulkern</u> and

---

[11] This reasoning does not rest on the logic, derided by Thompson in his reply brief, that "very good work by a defense lawyer in one part of a case 'covers-up' or 'fills-in' or 'papers-over' deficient performance demonstrated in some other aspect of representation." Instead, we conclude, on the facts of this case, that a competent defense attorney seeking to secure the best possible outcome for Thompson at sentencing could reasonably have concluded that Thompson's interests were best served by forgoing a speculative challenge to the use of his Maine drug conviction as a predicate offense in favor of other tactics. <u>See</u> <u>Vargas-De Jesús</u>, 813 F.3d at 418-19.

- 23 -

subsequent cases. Thompson does not dispute that, had his counsel objected during sentencing, the government would have had the opportunity to submit additional Shepard documents showing that his Maine drug conviction was under a subdivision of the Maine trafficking statute that does qualify as a controlled substance offense, if such documents were available. He also does not develop any argument that, at the time of his state offense and conviction, the Maine trafficking statute criminalized any conduct that would not qualify as a controlled substance offense other than heroin-possession offenses of the type identified in Mulkern.[12] As a result, even if his counsel could have anticipated Mulkern at the time of his sentencing in 2013, challenging the use of the Maine drug conviction as a predicate offense would have made sense only if his attorney believed that the conviction had been for simple heroin possession -- or, at least, that the government could not produce Shepard documents proving otherwise.

Thompson surely knows what drugs he trafficked in Maine, but he has offered no evidence or even argument that his conviction was for simple heroin possession, or that there is any reason to

---

[12] Thompson's brief asserts that Maine law also defined "Traffick" to include simple possession of two grams or more of fentanyl. This provision was not added until 2015, see 2015 Me. Laws ch. 346, § 1, and so could not have been the basis of Thompson's 2007 conviction. Maine's legislature eliminated the fentanyl- and heroin-specific portions of the definition of "Traffick" in 2021. See 2021 Me. Laws ch. 396, § 1.

believe the government would have been unable to produce Shepard documents showing otherwise. Nor does he provide any reason to believe that his counsel was unaware of the drugs underlying his Maine conviction. Nothing in his argument addresses the possibility that, based on communications with Thompson or other investigation, Thompson's counsel reasonably concluded both that the Maine drug conviction was not of the heroin-possession variety and that the government would be able to prove as much in response to any objection. Given that possibility, Thompson has not rebutted our "strong presumption that [his] counsel's conduct f[ell] within the wide range of reasonable professional assistance."[13] Tevlin, 621 F.3d at 66 (quoting Strickland, 466 U.S. at 689).

It is also significant that three different attorneys who independently represented Thompson during the sentencing phase did not raise any objection to the use of the Maine drug conviction

---

[13] Thompson's counsel asserted at oral argument that we should excuse the lack of support on this point by construing Thompson's pro se district court filings liberally. But there is simply nothing in Thompson's filings, however liberally construed, that fills this gap in his deficiency claim. Although "courts have historically loosened the reins for pro se parties, the right of self-representation is not a license not to comply with relevant rules of procedural and substantive law." Tang v. Citizens Bank, N.A., 821 F.3d 206, 220 n.13 (1st Cir. 2016) (internal quotation marks omitted) (quoting Eagle Eye Fishing Corp. v. U.S. Dep't of Com., 20 F.3d 503, 506 (1st Cir. 1994)); see also, e.g., Voravongsa v. Wall, 349 F.3d 1, 8 (1st Cir. 2003) (declining to excuse untimeliness of habeas petition based on petitioner's pro se status).

as a predicate offense.  Cf. White v. Fla., Dep't of Corr., 939 F.2d 912, 914 (11th Cir. 1991) (concluding that counsel was not deficient in failing to recognize an error in a hearing transcript because "[t]he error . . . went undiscovered by several attorneys and judges for approximately five years . . . [and] was not obvious").  While it is of course possible for multiple attorneys to perform deficiently, Thompson's counsels' unanimity on this point buttresses our conclusion that, "given the facts known at the time, counsel[s'] choice was [not] so patently unreasonable that no competent attorney would have made it."  Vargas-De Jesús, 813 F.3d at 418 (quoting Knight, 447 F.3d at 15).

Thompson has not shown that his counsel performed deficiently.  Because Thompson "has the burden of showing both deficient performance and prejudice," his failure to establish the former means we need not address the latter.  United States v. Rodriguez, 675 F.3d 48, 58 (1st Cir. 2012) (citing Strickland, 466 U.S. at 687).  The ineffective assistance claim fails, and we affirm.